13-2911
*Sunrise Detox v. City of White Plains*

1  UNITED STATES COURT OF APPEALS
2  FOR THE SECOND CIRCUIT

3  August Term, 2013

4  (Argued:  May 8, 2014    Decided:  October 2, 2014)

5  Docket No.13-2911

6  ───────────────────

7  Sunrise Detox V, LLC,
8  *Plaintiff–Appellant,*

9  v.

10  City of White Plains, City of While Plains Common Council, City of White Plains
11  Department of Building,
12  *Defendants–Appellees.*

13  ───────────────────

14  Before:      JACOBS, SACK, and LYNCH, *Circuit Judges.*

15         The plaintiff, a provider of medically supervised care for individuals

16  recovering from alcohol and drug abuse, sought permission to operate a

17  treatment facility in White Plains, New York.  After a determination that the

18  facility did not meet applicable zoning regulations, the plaintiff brought this suit

19  under the Americans with Disabilities Act.  The United States District Court for

20  the Southern District of New York (Vincent L. Briccetti, *Judge*) dismissed the

21  complaint for lack of subject-matter jurisdiction, concluding that the plaintiff, by

22  declining to seek a variance or appeal the zoning decision, had failed to obtain a

1

1   final decision on its application.  Because we reject the plaintiff's argument that

2   its allegations of intentional discrimination relieve it from the final-decision

3   requirement, the judgment of the district court is

4       AFFIRMED.

5                                   JAMES K. GREEN, West Palm Beach, FL
6                                   (Robert L. Schonfeld, Moritt Hock &
7                                   Hamroff LLP, Garden City, NY, *on the*
8                                   *brief*), *for Plaintiff–Appellant.*

9                                   LALIT K. LOOMBA (Peter A. Meisels, John
10                                  M. Flannery, *on the brief*), Wilson, Elser,
11                                  Moskowitz, Edelman & Dicker LLP, White
12                                  Plains, NY, *for Defendants–Appellees.*

13  SACK, *Circuit Judge*:

14      Sunrise Detox V, LLC, applied for a special permit under the zoning

15  ordinance of White Plains, New York, to establish a facility for individuals

16  recovering from drug or alcohol addiction.  In order to satisfy the zoning

17  regulations in force at its identified site, Sunrise sought to have its proposed

18  facility designated a "community residence."  The commissioner of the city's

19  Department of Building determined that the facility did not qualify as a

20  community residence and that, as a result, the city could take no further action

21  on the application until Sunrise either applied for a variance or appealed the

22  determination.  Instead, Sunrise brought this action alleging intentional

23  discrimination, disparate impact discrimination, and failure to grant a reasonable

1   accommodation in violation of the Americans with Disabilities Act ("ADA"), 42

2   U.S.C. § 12101 *et seq.*  Because we conclude that the dispute is not ripe, we affirm

3   the judgment of the district court.

## BACKGROUND

5         Sunrise wants to establish a facility for individuals recovering from

6   addiction at 37 DeKalb Avenue, White Plains, New York, in a building that was

7   formerly used as a nursing home.  Because the site is located in the city's R2-2.5

8   zoning district, Sunrise's proposed facility would have to qualify as a

9   "community residence" or a "domiciliary care facility" and be granted a special

10  permit from the city's Common Council in order to operate within the city's

11  zoning ordinance.[1]  The ordinance defines a "community residence" as

12          [a] residential facility for the mentally disabled operated
13          pursuant to the New York State Mental Hygiene Law
14          and regulations promulgated thereunder, including an
15          alcoholism facility, a hostel, a halfway house and any
16          other such facility as defined in such regulations, and
17          any similar facilities operated under the supervision of
18          federal departments and agencies.

19  City of White Plains, N.Y. Zoning Ordinance § 2.4 (1981) (hereinafter

20  "Ordinance"), *available at* http://www.cityofwhiteplains.com/index.aspx?nid=120

21  (last visited Oct. 1, 2014).

---

[1] The nursing home's establishment predated the current ordinance, and it was granted a special permit to continue operation as a "domiciliary care facility."

3

1    On June 15, 2012, Sunrise submitted its application for a special permit for

2    its proposed facility, which it styled a "community residence," to the city

3    Department of Building.  *See* Ordinance § 6.3.  In a cover letter, Sunrise stated

4    that the residence would "operate as a short-term, medically monitored facility"

5    treating "adults who have a primary substance use disorder which requires

6    medical detoxification," with a maximum capacity of 33 beds and an average

7    client stay of 5.7 days.  J.A. 89, 90.  Having "determined [the application] to be

8    complete," Ordinance § 6.3, the commissioner of the Department of Building

9    forwarded Sunrise's proposal to the Common Council.

10    The application was deemed "officially submitted and received" at the

11    Common Council's early July meeting and was then forwarded to the Planning

12    Board, in accordance with the procedures set out in the zoning ordinance.

13    Ordinance §§ 6.3, 6.4.1.  The Planning Board unanimously recommended

14    approval "for a period of one year," finding that "the proposed community

15    residence meets the special permit requirements of the zoning ordinance."  Letter

16    of Michael Quinn, Chairman, Planning Board, to Mayor and Common Council of

17    White Plains (July 27, 2012) (J.A. 177).  The city's Department of Law also

18    reviewed the application, and a public hearing was set for September 4, 2012.

4

1    As public opposition to the facility mounted through the summer of 2012,

2    however, Sunrise sought to delay the hearing.  After two adjournments and two

3    open sessions, the Common Council ended public hearings on December 3, 2012.

4    Sunrise then changed tack, writing to the mayor of White Plains and the

5    Common Council to "request[ ] a reasonable accommodation to treat Sunrise's

6    proposed use as a 'Community Residence.'"  Letter of Sunrise to Mayor and

7    Common Council of White Plains, at 1 (Dec. 19, 2012) (J.A. 119).  At its next

8    meeting, the Common Council adopted a resolution permitting the letter to be

9    considered despite its late submission and allowing an additional two weeks for

10   public comment.

11   The Common Council also referred the application back to the Planning

12   Board for reconsideration in light of Sunrise's letter.  The board reiterated its

13   view that Sunrise's proposal met the ordinance's special permit requirements.

14   But local residents argued that the proposed facility did not qualify as a

15   "community residence."  They asserted in letters submitted during the extended

16   public comment period that the proposed number of beds and short client stays

17   made the facility a short-term inpatient treatment facility rather than a

18   community residence under state law.  *See* N.Y. Mental Hyg. Law § 1.03(28)

1    (stating that a "community residence" "provides . . . a homelike environment and

2    room, board and responsible supervision for the habilitation or rehabilitation of

3    individuals with mental disabilities as part of an overall service delivery system"

4    but also "include[s] an intermediate care facility with fourteen or fewer

5    residents").

6        On February 27, 2013, after reviewing Sunrise's supplemented application,

7    the commissioner of the Department of Building issued a revised determination.

8    He noted that the department had "initially concluded that the proposed facility

9    most closely matched the 'Community Residence' definition" in the zoning

10    ordinance, but explained that the newly submitted information had led it to

11    reconsider.  Letter from Damon A. Amadio, Comm'r, Dep't of Bldg., to Mayor

12    and Common Council of White Plains, at 1–2 (Feb. 27, 2013) (J.A. 129–31).  The

13    department, he wrote, had now determined that the services provided by Sunrise

14    were properly classified as "Crisis Services," so that the "closest appropriate

15    zoning ordinance classification . . . [wa]s Hospitals or Sanitaria"—a use not

16    permitted in the R2-2.5 zone.  *Id.* at 3 (J.A. 131).  The commissioner informed

17    Sunrise that it would have to either seek a variance or appeal the department's

1   determination to the Zoning Board of Appeals in order to proceed with its

2   application.  *Id.*; *see also* Ordinance § 6.4.5.2.

3   Sunrise did not seek relief from the Board of Appeals.  Instead, it filed this

4   lawsuit on March 11, 2013,  alleging that the city intentionally discriminated

5   against it and its prospective clients; that the commissioner's interpretation of

6   "community residence" disparately impacted Sunrise and its prospective clients;

7   and that the city failed to offer a reasonable accommodation by allowing

8   Sunrise's proposed use of the property.

9   Sunrise filed a motion for a preliminary injunction on March 20, 2013.  On

10  April 30, 2013, the city cross-moved to dismiss the complaint pursuant to Rule

11  12(b)(1).  Oral argument was held on July 8, 2013.  At the close of argument, the

12  district court (Vincent L. Briccetti, *Judge*) dismissed the case for lack of subject-

13  matter jurisdiction, concluding that Sunrise's claims were unripe for adjudication

14  by the court because they presented "a zoning dispute as to which there has been

15  no final determination."  Tr. of Oral Argument at 63, *Sunrise Detox V, LLC v. City*

16  *of White Plains*, No. 13 Civ. 1614 (VB) (S.D.N.Y. July 8, 2013) (relying on *Murphy v.*

17  *New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005)).  The district court also

18  concluded that the futility exception to the final determination requirement did

7

1   not apply because Sunrise had shown neither that the Board of Appeals lacked

2   jurisdiction to grant a variance or to reverse the commissioner's determination,

3   nor that the Board of Appeals had "dug in its heels and made clear that all such

4   applications will be denied." *Id.* at 64.  Judgment was entered on July 10, 2013.

5        Sunrise appeals, arguing that the dispute is ripe for adjudication and that

6   the city violated the ADA by intentionally discriminating against its prospective

7   clients and failing to make a reasonable accommodation.[2]

8                                    **DISCUSSION**

9        This Court reviews *de novo* the dismissal of a complaint under Rule

10  12(b)(1).  *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013).  The district court's

11  determination that an issue is not ripe is also reviewed *de novo*.  *United States v.*

12  *Broadcast Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001).

13       Because "[r]ipeness is a jurisdictional inquiry," landowners bringing

14  zoning challenges must meet "the 'high burden' of proving that we can look to a

15  final, definitive position from a local authority to assess precisely how they can

16  use their property" before this Court may entertain their claims.  *Murphy*, 402

17  F.3d at 347.  Sunrise argues that this final-decision requirement does not apply to

---

[2] Because its brief makes no argument regarding disparate impact, Sunrise has waived that issue on appeal.  *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

1    zoning challenges under the ADA based on allegations of intentional

2    discrimination because those "cause[] a uniquely immediate injury" rendering

3    such claims "ripe from the act of discrimination."  Appellant's Br. 22.  In the

4    alternative, Sunrise contends that its suit is ripe either because the city

5    constructively denied its application or because further pursuit of the application

6    would have been futile.  We conclude otherwise.

7         The Supreme Court has articulated "specific ripeness requirements

8    applicable to land use disputes," *Murphy*, 402 F.3d at 347, in particular holding

9    that a takings claim "is not ripe until the government entity charged with

10   implementing the regulations has reached a final decision regarding the

11   application of the regulations to the property at issue," *Williamson Cnty. Reg'l*

12   *Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).

13   Although *Williamson County* involved a challenge to a regulatory taking, the

14   final-decision requirement "has not been so strictly confined."  *Murphy,* 402 F.3d

15   at 349-50 (citing opinions from the Third, Seventh, and Ninth Circuits).  We have

16   previously extended the final-decision requirement to zoning challenges based

17   on substantive due process; First Amendment rights of assembly and free

18   exercise; the Religious Land Use and Institutionalized Persons Act of 2000

9

1    ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*; and a state analogue to RLUIPA, the

2    Connecticut Act Concerning Religious Freedom ("CACRF"), Conn. Gen. Stat.

3    § 52-571b.  *See Southview Assocs. v. Bongartz*, 980 F.2d 84, 96–97 (2d Cir. 1992)

4    (substantive due process); *Murphy*, 402 F.3d at 352 (First Amendment, RLUIPA,

5    and CACRF).  For the reasons that follow, we decline to adopt a categorical rule

6    excepting from the final-decision requirement any case in which a landowner

7    alleges intentional discrimination.

8         We have previously characterized "[t]he purpose of the ripeness

9    requirement" as "ensur[ing] that a dispute has generated injury significant

10   enough to satisfy the case or controversy requirement of Article III of the U.S.

11   Constitution."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d

12   83, 90 (2d Cir. 2002).  *Williamson County*'s final-decision requirement helps

13   distinguish between those cases in which a plaintiff has suffered a "concrete and

14   particularized," "actual or imminent" injury, *Lujan v. Defenders of Wildlife*, 504 U.S.

15   555, 560 (1992), and those in which the injury is "merely speculative and may

16   never occur, depending on the final administrative resolution," *Dougherty*, 282

17   F.3d at 90; *see Williamson Cnty.*, 473 U.S. at 191 ("[T]he factors of particular

18   significance in the [takings] inquiry . . . . simply cannot be evaluated until the

10

1    administrative agency has arrived at a final, definitive position regarding how it

2    will apply the regulations at issue to the particular land in question.").  In other

3    words, a non-final decision on how a parcel of land may be used does not

4    ordinarily give rise to an injury that is sufficiently concrete and particularized to

5    satisfy Article III.

6          Sunrise argues, however, that there are limits to the principle announced

7    in *Williamson County*, and that distinctions between the rights at issue in that case

8    and in this one illustrate those limits.  Sunrise points out that *Williamson County*

9    involved a claim of "regulatory taking"— that is, a claim that the denial of the

10    landowner's development proposal was tantamount to a taking of the owner's

11    property for public purposes, that under the Constitution entitled the owner to

12    compensation.  *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017 (1992);

13    *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  In such a case, Sunrise

14    argues, the landowner seeks compensation for a harm that is inherent in the

15    denial of the permit itself, which is not complete until the proposed land use is

16    finally and definitely forbidden.  Here, in contrast, Sunrise claims that it was the

17    victim of an act of disability discrimination forbidden by federal law, and that

11

1    the injury from such discrimination is experienced as soon as the official acts

2    with a discriminatory motivation.

3        The argument is not without appeal.  Generally, when a public official

4    violates constitutional or statutory rights of citizens to equal treatment, we allow

5    resort to the federal courts to vindicate those rights, without requiring the

6    offended person to exhaust potentially available state remedies first.  *See Patsy v.*

7    *Fla. Bd. Of Regents*, 457 U.S. 496, 516 (1982); *Doe v. Pfrommer*, 148 F.3d 73, 78 (2d

8    Cir. 1998).  In such cases, however, the victim of discrimination normally seeks

9    compensation, in the form of money damages, for the violation of his or her

10   rights.

11       We need not address here whether a property owner who claimed that a

12   local official vetoed his or her development project out of hostility based on the

13   owner's race, gender, disability, or the like, in violation of federal statutory or

14   constitutional law, could seek immediate recompense in federal court from that

15   official for the dignitary or emotional harm inflicted by the official even in the

16   absence of a final decision on the development proposal or without pursuing an

17   administrative appeal of that action.  That question is not presented in this case,

18   because Sunrise does not seek compensatory damages from the official who it

12

1    claims acted out of discriminatory motivation, but rather seeks an injunction

2    blocking the disapproval and authorizing construction of its project.  Regardless

3    of the basis of the claim that the local action violated federal rights, the relief

4    sought brings the case squarely within the compass of *Williamson County* and its

5    progeny.

6          Even if it were true that the challenged rejection by the Building

7    Department was the product of a discriminatory motivation on the part of the

8    official who issued it, that illegal act would not necessarily require, as a remedy,

9    the issuance of a permit to Sunrise.  If Sunrise proceeds with its application, the

10   rejection may be reversed, and the project may be permitted to proceed—or the

11   application may be rejected on other, non-discriminatory grounds.  Only after

12   Sunrise completes the process will it be known whether the allegedly

13   discriminatory decision of the official had any effect at all on Sunrise's

14   application.

15         We think, therefore, that a plaintiff alleging discrimination in the context of

16   a land-use dispute is subject to the final-decision requirement unless he can show

17   that he suffered some injury independent of the challenged land-use decision.

18   Thus, for example, a plaintiff need not await a final decision to challenge a

1    zoning policy that is discriminatory on its face, *Jackson v. Okaloosa Cnty., Fla.*, 21

2    F.3d 1531, 1541 (11th Cir. 1994), or the manipulation of a zoning process out of

3    discriminatory animus to avoid a final decision, *Groome Res. Ltd. v. Parish of*

4    *Jefferson*, 234 F.3d 192, 199–200 (5th Cir. 2000).  In those cases, "pursuit of a further

5    administrative decision would do nothing to further define [the] injury," and the

6    "claim should not be subject to the application of the *Williamson* ripeness test."

7    *Dougherty*, 282 F.3d at 90.

8        This is not such a case.  Sunrise alleges that the commissioner's

9    determination that its facility did not qualify as a "community residence" and the

10    Common Council's failure to take further action on its application thereafter

11    caused it immediate injury.  Appellant's Br. 24-25.  But in light of administrative

12    avenues for relief outlined in the zoning ordinance and the commissioner's letter,

13    we conclude that neither of these acts gave rise to an injury independent of the

14    city's ultimate land-use decision.  Sunrise must therefore "prov[e] that we can

15    look to a final, definitive position" from the city regarding its application before

16    we may entertain its claims.  *Murphy*, 402 F.3d at 347.

17        That Sunrise has failed to do.  We have previously interpreted *Williamson*

18    *County* as "condition[ing] federal review on a property owner submitting at least

14

1    one meaningful application for a variance." *Id.* at 348.  By forgoing the avenues

2    for relief outlined in the commissioner's revised determination, Sunrise deprived

3    the city of the opportunity to issue a final decision.  *See* Ordinance § 6.4.5.2

4    (barring the city from taking any further action on an application until the

5    applicant procures all required variances).  A federal lawsuit at this stage would

6    inhibit the kind of give-and-take negotiation that often resolves land use

7    problems, and would in that way impair or truncate a process that must be

8    allowed to run its course.  In light of Sunrise's midstream abandonment of the

9    zoning process, its claim is not yet ripe.

10         Nor can we excuse Sunrise's failure to comply with the final-decision

11    requirement by characterizing the city's response to its request for a reasonable

12    accommodation as "constructively denying" its application.  First, because

13    Sunrise's request sought the same result as its special permit application, we do

14    not think that the city ignored the request by incorporating it into the

15    application.  *See Oxford House, Inc. v. City of Virginia Beach*, 825 F. Supp. 1251, 1261

16    (E.D. Va. 1993) (stating that the "zoning process, including the hearings on

17    applications for conditional use permits, serves" Congress's purpose to provide

18    municipalities with "the opportunity to adjust their generally applicable rules to

15

1    allow handicapped individuals equal access to housing").  Second, we have

2    explained that to prevail on a reasonable accommodation claim, "plaintiffs must

3    first provide the governmental entity an opportunity to accommodate them

4    through the entity's established procedures used to adjust the neutral policy in

5    question."  *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003).

6    Again, Sunrise's failure to pursue a variance or to appeal the commissioner's

7    determination deprived the city of this opportunity.

8          Nor do we think that requiring Sunrise to pursue an administrative appeal

9    or an application for a variance would necessarily be futile.  The city's Board of

10   Appeals does not "lack[ ] discretion to grant variances," *Murphy*, 402 F.3d at 349;

11   *see also* Ordinance § 10.3.5.  And Sunrise's own failure to "submit[ ] at least one

12   meaningful application for a variance" prevents us from determining whether

13   the board "has dug in its heels and made clear that all such applications will be

14   denied," *Murphy*, 402 F.3d at 348, 349; *see also* Ordinance § 6.4.5.2, so as to permit

15   us to treat the matter appealed from as ripe for judicial consideration.  We thus

16   see no basis in the record to apply the futility exception to the final-decision

17   requirement in this case.

1                                **CONCLUSION**

2              We have considered Sunrise's remaining arguments and have found them

3    to be without merit.  We therefore AFFIRM the judgment of the district court

4    dismissing Sunrise's claims for lack of subject-matter jurisdiction.